Filed /1/21/22  Conservatorship and Estate of Bower CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person and Estate of DAVID BOWER. <br><br> ANDREA BOWER, as Conservator, etc., <br><br> Petitioner and Appellant, <br><br> v. <br><br> LYNN BOWER, <br><br> Objector and Respondent. | G058209 <br> (Consol. with G058808) <br><br> (Super. Ct. No. 30-2011-00471248) <br><br> OP I N I O N |

Appeal from judgments of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed in part, reversed in part and remanded with directions.

Law Office of Alan S. Yockelson and Alan S. Yockelson for Petitioner and Appellant.

Thompson & Colegate, Susan Knock Beck and Laura A. Zamora; Law Offices of Robert J. Christensen and Robert J. Christensen for Objector and Respondent.

## INTRODUCTION

During David Bower's protracted illness, Andrea Bower, his former conservator, frequently clashed with David's wife, Lynn Bower. The result was a long, drawn-out battle which took place in the family court and in the probate court, as well as briefly in this court.[1]

The two judgments from which Andrea now appeals concern (1) her amended fourth and fifth (and final) accountings and (2) her third amended and restated accounting. Together the three accountings covered the period between November 30, 2014, and March 23, 2018, when Andrea was removed as David's conservator.

Due to circumstances explained below, the third accounting was tried twice. As a result, the judgment on the fourth and fifth accountings was entered and appealed before the judgment on the third accounting. We are issuing one opinion for both appeals, as many facts and several issues are common to both.

The probate court took a decidedly dim view of Andrea's stewardship. It denied many of her requests for fees and reimbursement and slashed others. Andrea's two appeals, however, are restricted to four main issues: payment of and reimbursement for legal fees; rulings regarding her fees and expenses as David's conservator, one of which resulted in a surcharge; one-on-one care expenses for David at his assisted living facility (fourth and fifth accountings only); and the finding in the judgment on the fourth and fifth accountings that Andrea opposed Lynn's objections to these accountings in bad faith.

We affirm the probate court's rulings in all respects except for two: (1) the ruling denying payment for any attorney fees incurred for *Bower I* during the third and fourth accounting periods, and (2) the ruling denying Andrea's counsel's request for payment of 10.1 hours of legal fees during the third accounting period. We return the

---

[1] *Conservatorship of Bower* (2016) 247 Cal.App.4th 495 (*Bower I*). A summary of the facts relevant to the early period of the conservatorship is included in that opinion.

matter to the probate court for the sole purpose of determining reasonable and necessary fees for these legal services, if any.

## FACTS

David and Lynn were married in 1983. They acquired a considerable number of real properties, and they worked side by side as full-time landlords.

David was diagnosed with frontotemporal lobe dementia in 2007, while he was still a relatively young man. This cruel and lingering disease affects not only the victim's memory and personality, but also the ability to communicate. As David's illness progressed, managing the couple's real property enterprise devolved entirely on Lynn.

David's sister Andrea became his temporary conservator in 2011 and his permanent conservator at the end of 2012.[2] In 2013, the probate court ordered Lynn to send Andrea $12,000 per month to provide for David's care. In October 2015, after a hearing, this amount was reduced to $8,000 per month.

The period between 2013 and David's death in 2018 was marked by disputes between Lynn and Andrea over David's care, resulting in frequent resorts to one court or another.[3] It is not necessary to recite the entire saga; we have concentrated here on the facts relevant to the appellate issues arising from the probate court's statement of decision and judgment on the fourth and fifth accounting periods, issued on July 22, 2019, after four days of trial in April and the statement of decision and judgment on the amended and restated third accounting issued on December 23, 2019, after four days of trial in August.

---

[2] Between January and November 2012, two professional conservators managed David's person and estate.

[3] Andrea was removed as David's conservator in March 2018. As the court described it, "The evidence presented supports a finding that a long history of personal conflict and clouded personal feelings has resulted in a need for the court at this time to remove and replace Conservator, Dr. Andrea Bower. The lack of communication and ability [to] resolve issues on this case has resulted in unreasonable costs both in fees and charges for the care and maintenance of David." David died on November 18, 2018.

3

Before diving into the accounting issues, we must explain the circumstances behind the first appeal, *Bower I*. The underlying issue was the division of David and Lynn's marital estate pursuant to Probate Code section 3089.[4] (*Bower I, supra,* 247 Cal.App.4th at p. 504.) In May 2013, the probate court heard a request to order Lynn to pay for David's support under section 3080. The court ordered her to pay Andrea more than $340,000 to settle heretofore unpaid claims against the conservatorship. The issue of dividing the marital estate was continued to a later hearing date. (*Id.* at p. 503.)

To raise that sum, Lynn had to liquidate about half a million dollars in real property; she did so over the next few months. (*Bower I, supra,* 247 Cal.App.4th at p. 503.) The bulk of the proceeds – some $275,000 – went to pay judgment liens by attorneys and conservators from escrow. In addition, Lynn paid off some creditors directly, rather than through Andrea. (*Id.* at pp. 503-504.)

When the matter of dividing the marital estate was reconvened in December 2013, Lynn argued that the $275,000 paid from escrow and directly to creditors was for attorney fees and conservatorship administration fees, as opposed to support for David. (*Bower I, supra,* 247 Cal.App.4th at p. 504.) The court disagreed. It held that the entire $340,000 was for his support and characterized Lynn's failure to pay Andrea directly as a refusal to comply with a court order, triggering the sanction of section 3089. The court divided the marital estate in March 2014. (*Ibid.*) Lynn filed her notice of appeal in July.

Oral argument took place on February 19, 2016. We reversed the order dividing the estate, on the ground that section 3089 referred to an order regarding *support* of the conservatee spouse, not to an order to pay attorney fees and conservatorship

---

[4] All further statutory references are to the Probate Code.
Section 3089 provides in pertinent part, "If the spouse who has the management or control of the community property refuses to comply with any order made under this article . . . to provide support for the conservatee spouse, upon request of the petitioner or other interested person, the court may, in its discretion, divide the community property and the quasi-community property of the spouses, as it exists at the time of division, equally in the same manner as where a marriage is dissolved."

administration fees, which are covered under a different part of the Probate Code. We noted that these fees are *never* paid automatically but must *always* be first approved by the court. (*Bower I, supra,* 247 Cal.App.4th at p. 509.) We remanded "to consider again the question of whether the marital estate should be divided, using a standard of whether Lynn refused to comply with orders for the support and maintenance of . . . David . . ., as distinct from paying professional fees." (*Id.* at p. 512.)

The *Bower I* opinion was issued on April 15, 2016.[5] After remand, Andrea dismissed her petition to divide the marital estate, in February 2018.

**The Fourth and Fifth Accountings (December 2015 – March 2018)**

Because the final judgment for the fourth and fifth accountings was entered before the final judgment for the amended third accounting, we deal with the facts connected with the former two accountings first.

This requires us to look back to the initial trial of the third accounting. That was first tried in August and September 2018, and the statement of decision and judgment – issued in October and December 2018 respectively – severely criticized Andrea. The court refused to approve the third accounting and ordered certain issues retried. The court also suggested that Andrea redo the fourth and fifth accountings to eliminate the kinds of requests the court had found objectionable in the third accounting.[6] As a result, the court had before it in April 2019 the *amended* fourth accounting and the *amended* fifth accounting, both of which ostensibly took into account the criticisms the court had articulated in 2018 regarding third accounting. The rulings the court made on the fourth and fifth accountings then carried over into the subsequent trial of the amended third accounting.

---

5
   The opinion originally issued as unpublished. Its status was changed to published on May 16, 2016. Andrea filed a petition for rehearing, which was denied on May 16, 2016.

6
   The court said it would "*suggest* [that Andrea] also supplements or amends her presently pending accountings [i.e., accountings four and five] with a more conservative approach to her demands for services [.]"

The issues Andrea has identified in her appeal of the judgment on the fourth and fifth accountings are (1) legal fees, (2) her conservatorship fees and expenses, (3) a surcharge for one-on-one care, and (4) a finding of bad faith.

**Legal Fees**

In the statement of decision for the original third accounting, the court remarked on "a truly unconscionable amount of money on attorneys and legal proceedings." The court reiterated this remark in the judgment on accountings four and five.

Andrea's probate counsel submitted a request for $9,742 in fees for the fourth period and $64,881 in fees for the fifth period. Andrea asked for reimbursement for $5,000 she had paid probate counsel during the fourth period from her own funds. In addition Andrea asked to be reimbursed for $12,041, which she paid her appellate attorneys for services rendered during the fourth period relating to *Bower I.* Finally, she asked to be reimbursed for $100,000 paid to her probate counsel during the fifth period out of her own funds.

The court denied probate counsel's request for legal fees for the fourth period because "the record of services is so poorly kept and shown as not to warrant payment of the $9,742.24 amount under the Fourth Accounting[.]" Reimbursement of the $12,000 in appellate fees was denied in its entirety "based on the reasoning set forth in the December 7, 2018 Judgment on the Third Accounting . . ., which rejected reimbursement for legal fees and costs associated with [*Bower I*] or any other court proceedings in which [Andrea] did not prevail." The court's denial of the $100,000 reimbursement request in the fifth accounting was based on its conclusion that "Andrea's action concerning the reimbursement demand . . . following the sale of the Riverside Mobile Home Park were not pursued in good faith. Failing to inform the Court that she had already stripped the escrow of $197,701.77, yet still demand[ing] payment for more

6

support is nothing more than perpetrating a fraud on the court."[7] The 2019 statement of decision and judgment included a list of 12 petitions, applications, motions, or accountings prepared or occurring during the fifth period that the court found "did not benefit [David]." The court approved legal fees to Andrea's probate counsel in the amount of $16,207 – 50.2 hours at $322 per hour.

**Conservatorship Fees and Expenses**

In the October 12 statement of decision, following the first trial of the third accounting, the court stated, "Some of these same errors in judgment [regarding conservatorship fees] occurred as far back as 2013" as was indicated by demands by the bench officer who heard previous accountings and petitions before approval was granted. "However, Andrea has failed to modify her approaches and actions as conservator even though they have been shown poor or wasteful." The court also noted that "transportation costs are usually subsumed within the conservator's general fees unless the distance is extreme. It was not here."

In the fourth and fifth accountings, Andrea requested approval of $4,780 for her own services during the fourth period and of $19,986 for her services during the fifth period. She billed her services at $80 per hour, reduced from her former rate of $100 per hour. The court approved 52.75 hours for the fourth period and 118.28 hours during the fifth period at $50 per hour. The court also denied her requests for mileage and court parking costs for the fifth period "pursuant to the Court's reasoning in its October 12, 2018 Statement of Decision [i.e., after the first trial of the third accounting.]"

The 2018 (first) judgment on the third accounting included a list of activities for which Andrea had requested compensation and for which compensation was

---

[7] Lynn sold a mobile home park in Jurupa Valley in Riverside County in early 2017 for $2.4 million. Andrea received $196,696 from escrow on the sale, plus $1,005 in interest, in early March 2017. She neglected to inform the judge that she had received these funds from escrow. Her probate counsel also independently received $14,343 from this escrow.

denied. These activities included waiting for a delivery of a television set for David, speaking with her mother regarding David, and "dealing with 'David's behavior.'"

In the judgment and statement of decision for the fourth and fifth accountings, the court criticized Andrea for ignoring its prior admonition to reduce "the *type* of activities for which she demands payment." In addition, the court ruled that the reduction in her hourly rate – from $100 to $80 – was not enough given that she was a nonprofessional conservator.

**One-on-One Care**

David resided in several assisted living facilities during the course of his illness. During the period relevant to the appeal of the fourth and fifth accountings, David resided in a facility in San Diego County and then one in Orange County.[8]

While David was living in San Diego, Andrea charged the conservatorship estate with expenses for a personal attendant for him, in addition to the monthly charge for his stay. She claimed David was both a flight risk and a fall risk. In addition, because he was much younger and more robust than the other residents – most of whom were elderly and frail – he had to be prevented from harming them by running into them or pushing them. Both the fourth and fifth accountings included charges for this attendant.

At a hearing back in October 2015, a previous judge had addressed Andrea's contention that David needed one-on-one care. "The current facility he lives in . . . is meeting David's needs. David has settled down and has adjusted to the assisted living facility. The Court finds that there is sufficient one on one care and social interaction at the facility to meet David's needs. [¶] . . . [¶] The court finds that the current facility that David . . . lives in . . . meets his needs. The cost for the facility is approximately $7,000 per month. The court finds there is no need for additional one on one care for David. [¶] . . . [¶] . . . The Court finds there was insufficient showing at the

---

[8] David moved to the Orange County facility, which was closer to Lynn, in October 2017.

hearing that David . . . will benefit or that he needs any additional care than the care he receives under the current $7,000 fee for assisted living. . . . [¶] . . . [¶] . . . Andrea has argued that David needs additional one on one social interaction. The social contact that Andrea argues David needs would be met to some degree by making David more accessible to his wife and children and his mother who lives in Palos Verdes. That could be better accomplished by having David in an assisted living facility in Orange County that can provide the services he is receiving . . . for the same or similar price."

"So it appears to me that that facility meets his needs. It is a reasonable amount of money. I am going to be handling this case in the future. So whatever you are doing in terms of care, you are going to have to obviously present to the court and I am going to have to rule on it. But it appears right now that that is meeting his needs. The evidence was pretty clear to me on that."

Notwithstanding the court's findings – and the reduction in monthly support – Andrea continued to charge the estate for one-on-one care through September 2017, shortly before David was moved to Orange County. The record does not indicate any return to the court by Andrea or anyone else to authorize one-on-one care.

Lynn objected to the payment for one-on-one care in both the fourth and fifth accountings and asked to have Andrea surcharged for these expenses. The court surcharged Andrea $21,365 for the fourth period and $16,128 for the fifth period.

**Bad Faith**

The probate court found Andrea's opposition to Lynn's objections to the fourth and fifth accountings was "without reasonable cause and in bad faith." The court ordered Andrea to pay Lynn's reasonable attorney fees, pursuant to sections 2622.5, 11003, and 17211, in an amount to be set later, after a hearing.

9

**The Amended Third Accounting (November 2014 – November 2015)**

Andrea initially filed the petition for the third accounting period on February 28, 2017. The matter was tried over four days in August and September 2018. The court issued a statement of decision on October 12, 2018, and a judgment on December 7, 2018. [9]

In both documents, the court chastised Andrea and her counsel for overcharging the estate. In particular, the court identified several instances of Andrea's charging conservator fees for activities that did not benefit David and were not part of a conservator's brief. The court also noted the "unconscionable" legal fees that were mounting up, dwarfing the amounts spent for David's care. Andrea was ordered to submit an amended third accounting, "which shall include only time related to the reasonable care of David."

Andrea's amended and restated third accounting was tried over four days in August and September 2019, *after* the trial of and the entry of judgment on the fourth and fifth accountings. Because some issues had already been decided during the first trial, in 2018, the issues to be tried again were limited to (1) Andrea's fees, (2) her attorney fees, (3) reimbursement to Andrea for legal fees she had already paid, and (4) reimbursements to Andrea for specific services and merchandise. In all cases, the court required a showing that the fees and reimbursements were, first, reasonable, and, second, beneficial to David.

In its statement of decision and judgment on the amended third accounting, issued on December 23, 2019, the court was no less severe about Andrea's "poor or wasteful" approaches and actions relating to David's care. The court concluded that "[o]nce again, Andrea and her counsel had, as their primary focus, their requests for fees

_____

[9] The court modified the statement of decision on November 13, 2018. We quote from the modified version.

10

and reimbursements. Little time was used to explain the actual costs and expenditures for David . . . ."

The issues Andrea has identified in her appeal of the judgment on the amended third accounting are (1) legal fees, (2) her hourly conservatorship fee, and (3) a $24,000 surcharge.

**Legal Fees**

As they did in the fourth and fifth accountings, disputes over legal fees dominated the trial on the amended third accounting. Andrea originally asked for reimbursement for $87,895 in fees for her *Bower I* appellate counsel during the third accounting period. She reduced that amount to $69,039, having received an $11,000 refund from the law firm. She originally asked for reimbursement for $14,000 in fees paid from her own funds to probate counsel. During trial, she reduced this demand to $12,000 because she had made a mistake in her expenses elsewhere. Probate counsel also requested $79,833 for as-yet unpaid fees.

As it had in the fourth accounting, the probate court denied any payments or reimbursements for any legal fees incurred in *Bower I* during the third period.

Probate counsel's request for $79,833 in unpaid fees was denied because "[n]othing has been proffered to show these hours for which payment is demanded were reasonable services or not already covered by prior orders after hearings on prior accounting petitions." The court denied the $14,000 request for reimbursement. It denied a request for payment for 19.8 hours of attorney time to enforce a court order because "Andrea had no right to those funds." It denied a request for 10.1 hours to "correct and repair the First Accounting[.]" The court approved 178.6 hours of probate counsel's time at $341 per hour.

On appeal, Andrea disputes the court's refusal to award any attorney fees for *Bower I*, the court's denial of payment to probate counsel for 19.1 hours spent "to enforce a court order," the court's denial of a reimbursement of $14,000 (reduced to

11

$12,000) she paid to probate counsel, and the court's denial of fees to probate counsel for 10.1 hours spent "reviewing and preparing objections" to an account Lynn was ordered to prepare.

### Conservatorship Fee

The probate court reduced Andrea's self-awarded rate of $80 per hour for her own services to $50 per hour, as it had done for the fourth and fifth accountings.

### Surcharge

In February 2013, Andrea obtained an order requiring Lynn to pay her $12,000 per month for David's support. In June 2013, the court ordered Lynn to "provide [Andrea] with money to pay any extraordinary bills that arise . . . or some sort of care costs or expenses of [Andrea] that do not fit within the $12,000 per month previously ordered by the Court," and ordered her to pay "any and all sums requested by [Andrea] to pay ongoing charges and expenses related to the care, treatment and placement of [David] that exceed the above $12,000 monthly payment."

In September 2014, Andrea petitioned the probate court for an order requiring Lynn to pay her $24,000 "to cover ongoing charges and expenses related to the care, treatment and placement of [David] that exceed the $12,000.00 monthly support payment." She stated that she had been covering these extra expenses from her personal funds. She also claimed that she and her mother had each advanced $5,000 to the conservatorship bank account.

Andrea obtained an order on January 20, 2015, requiring Lynn to sell $24,000 worth of stock and turn the money over Andrea. Lynn did so, and Andrea deposited Lynn's check for $24,000 in the conservatorship account. On March 17, 2015, Andrea wrote a $24,000 check to herself from that account.[10]

---

[10] On the relevant schedule, Andrea characterized the check to herself as "court-ordered reimbursement on advance."

On March 26, 2015, Andrea filed her petition for approval of her *second* accounting, which period ran from December 2, 2013, through November 30, 2014. Included in this accounting was a request for reimbursement for legal services for probate counsel and appellate counsel and for an advance from Andrea of $5,000 dated September 10, 2014, for a total of $36,500.20. The accounting included another schedule of advances totaling $21,431, which included (1) an advance of $7,000 from Andrea dated December 2, 2013; (2) an advance of $2,931 from Andrea dated March 11, 2014; (3) an advance of $5,000 from Andrea dated March 24, 2014; and (4) an advance of $5,000 from Andrea dated September 10, 2014, totaling $19,931. Two other small advances from other people brought the total requested on this schedule to $21,431.

With respect to the second accounting, the court ruled on April 17, 2017, that Andrea "is entitled to reimbursement for legal fees paid and an advancement of funds to the conservatorship estate in the amount of $36,500.20." The court ruled that the second account was "approved, allowed and settled as filed and the acts of the conservator of the person and estate are confirmed." The court accepted none of Lynn's objections to the second accounting.

In her objections to the amended third accounting, Lynn included the $24,000 check Andrea wrote to herself. Lynn objected to this payment for lack of "proof of court order approving reimbursement."

During the first trial on the third accounting, Andrea was unable to explain where the $24,000 went in terms of payment for David's care, treatment, and placement. During the second trial, she testified as to the amount of the expenses, but she did not include written evidence of the payments in the amended third accounting. She asserted that the court had approved all the expenses.

In the 2019 judgment on the amended third accounting, the court surcharged Andrea for the entire $24,000 "because she had erroneously calculated she was due such an amount[.]"

13

Andrea now admits that she was erroneously reimbursed for $12,000 of that amount, through two payments of $5,000 and $7,000 from prior accountings. Yet she appears to be asking that the entire $24,000 surcharge be "stricken" because of "insufficient evidence to support a finding that Andrea acted wrongfully."

**DISCUSSION**

A trial court's decision is ordinarily presumed correct, and the appellant bears the burden of demonstrating error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) We review the issues Andrea has raised on appeal for substantial evidence or for abuse of discretion, depending on the issue. In reviewing for substantial evidence, we resolve all evidentiary conflicts and draw all reasonable inferences in favor of the judgment. "The testimony of one witness may be sufficient to support the findings." (*Conservatorship of B.C.* (2016) 6 Cal.App.5th 1028, 1034; see *Conservatorship of Isaac O.* (1987) 190 Cal.App.3d 50, 57 [reviewing court "'*ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing*'* [citation.]"].) What that means is that we sustain the trial court's factual findings if substantial evidence supports them, even in the face of contrary evidence. (*Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 347.) We reverse for abuse of discretion only if "the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence" (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1470) or if "there is no reasonable basis for the trial court's action." (*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1250.)

Two basic principles must animate the probate court's discretion when presented with an accounting. The first is benefit to the conservatee. Every dime spent, every action taken by the conservator and his or her assistants, including attorneys, is supposed to benefit the conservatee. (See, e.g., §§ 1850, 1851; Cal. Rules of Court, rule 7.756(a)(2).) The second is reasonableness. The Probate Code repeatedly makes

14

reasonableness the criterion by which the conservator's actions and expenditures are to be judged. (See, e.g., §§ 2623, 2640, 2641.)

In this case, it must also be recalled, the conservatorship "estate" was David's and Lynn's community property. So when the court was weighing benefit to the conservatee and reasonableness, it had to remember that Lynn also required support.

## I. Conservatorship Compensation and Expenses

Section 2623, subdivision (a), limits compensation for a conservator's services to that which "the court determines is just and reasonable." Compensable expenses are those "incurred in the exercise of the powers and the performance of the duties of the . . . conservator[.]" California Rules of Court, rule 7.756 lists factors a court may use to determine just and reasonable compensation. These factors include the benefit to the conservatee or to his estate of the services, the necessity for the services, and the compensation customarily allowed for the management of conservatorships.

The December 7, 2018, (first) judgment on the third accounting period was quite severe regarding Andrea's requests for reimbursement, describing them as "unreasonable," "wasteful," and "necessitated by her own poor choices or for her own benefit[.]" Andrea was ordered to resubmit her request for conservator fees for that period, "which shall include only time related to the reasonable care of David." The court admonished her that "any conservator time related to events which were caused by Andrea shall not be considered reasonable and shall not be included in the resubmitted accounting or request for conservator fees." "The Court shall review all three accountings [i.e., three, four, and five] in the light most *reasonable and necessary* for fees and services, and not merely the desires and demands of [Andrea]." The court also identified specific activities that were *not* reasonable and necessary.

### A. Fourth and Fifth Accountings

Andrea claims three errors relating to her fees and expenses in these accountings. First, the probate court erred when it reduced her hours for the fifth period

15

from 249.83 to 131.55. Second, her prior fee rate of $100 per hour was "approved" by a previous judge and could therefore not be subsequently reduced. Finally the probate court erred when it refused compensation for mileage and parking after a previous judge had already approved similar expenses in an earlier accounting. We review the probate court's determination of conservator fees for abuse of discretion. (See *Estate of Nazro* (1971) 15 Cal.App.3d 218, 221.)

Andrea confines her complaint about the reduction of her compensation to the 249.83 hours she submitted for the fifth period. She asserts the court abused its discretion by adopting Lynn's request to subtract 131.55 hours expended on litigation. The court adopted Lynn's characterization of this time as having been spent on legal matters "on which Andrea did not prevail, [that] were not for the benefit of David in any way, [that were] unreasonable, unnecessary, [and that] were used simply to harass Lynn[.]" Those are strong words.

The court identified 10 legal proceedings that took place during the fifth period that did not benefit David. In light of the 2018 rulings regarding the third accounting period, which also identified non-beneficial legal proceedings, it could hardly come as a surprise that the court would be looking closely at Andrea's fees for the fourth and fifth periods. We cannot say the court abused its discretion in rejecting compensation for activities the court warned in advance would not be approved because they did not benefit David.

On appeal, Andrea argues in general that the court should not have relied on Lynn's objections when it reduced the hours spent on litigation, pointing to the constant strife between the two of them. She makes no effort to show that any of the disallowed proceedings was reasonable or that David benefited from it. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America*

16

(1998) 67 Cal.App.4th 779, 784-785.) Given the vagueness of this argument, we cannot base a finding of abuse of discretion on it.[11]

Andrea also disputes the reduction of her hourly rate from $80 per hour to $50 per hour on the ground that the former rate was "approved" by a different judge. Therefore collateral estoppel prevented the present court from revisiting the rate.

The second accounting – covering the period from December 2, 2013, to November 30, 2014 – approved an hourly rate for Andrea of $100 per hour, noting that "during the time professional fiduciaries served in a temporary conservator role[,] hourly fees were higher than what [Andrea] seeks." Andrea does not direct us to an order in the record setting an hourly rate of $80.

Section 2103, subdivision (a), provides, "When a judgment or order made pursuant to this division becomes final, it releases the guardian or conservator and the sureties from all claims of the ward or conservatee and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order. For the purposes of this section, 'order' includes an order settling an account of the guardian or conservator, whether an intermediate or final account."

Accordingly, neither the court nor Lynn could revisit the ruling regarding Andrea's hourly rate for the second accounting. This does not mean, however, that the hourly rate is fixed in stone. Each time a conservator requests compensation, the court must scrutinize the request to make sure the amounts are "just and reasonable." (§ 2623, subd. (a)(2).) The court can consult earlier orders, of course, but it is not bound to perpetuate them. (See *Conservatorship of Presha* (2018) 26 Cal.App.5th 487, 499.)

---

[11] In her reply brief, Andrea argues that the court abused its discretion in reducing her fees for participating in litigation during the fifth accounting period because it approved litigation-related fees after the subsequent trial on the third accounting. According to Andrea, the court had to rule the same way both times. Andrea provides no legal authority to support this argument.

Andrea voluntarily reduced her hourly rate from $100 per hour to $80 per hour for the fourth and fifth accountings after the court expressed its deep disapproval of the $100 rate. The court determined that she had not reduced it enough, since she was not a licensed professional fiduciary.

Rule 7.756(9) of the California Rules of Court lists "[t]he compensation customarily allowed by the court in the community where the court is located for the management of conservatorships . . . of similar size and complexity" as one of the factors to be considered in determining a conservator's just and reasonable compensation. Another factor is "[t]he benefit to the conservatee . . . or his or her estate, of the conservator's . . . services." (Cal. Rules of Court, rule 7.756(2).) An experienced probate judge is in a far better position than we are to determine the going rate for nonprofessional conservators. (See *Powell v. Tagami* (2018) 26 Cal.App.5th 219, 237.) We find nothing to indicate the court abused its discretion in setting an hourly rate of $50 for these two accounting periods, especially in light of the court's conclusions regarding Andrea's performance as a conservator.

Finally, Andrea objects to the court's refusal to reimburse her for mileage and parking costs incurred in the fifth accounting period. She makes the same argument with respect to this issue: another judge had already approved these expenses.[12]

As with her hourly rate, whether to allow reimbursement for parking and mileage is fixed only with respect to final orders, in this case, approval of the second accounting. And a great deal had happened between the second accounting and the fifth accounting, events that prompted the court to take a much closer look at Andrea's numbers.

After the first trial of the third accounting, the court rejected Andrea's request for reimbursement of transportation costs because they are "usually subsumed

---

[12] Andrea received approval for parking and mileage for the second accounting period.

18

within the conservator's general fees unless the distance is extreme. It was not here." The Conservator's Handbook agrees.[13]

The court told Andrea in the 2018 statement of decision and judgment on the third accounting that she would not be reimbursed for travel expenses and why. Nevertheless, Andrea requested reimbursement for these expenses in the fifth accounting. We cannot find that the court abused its discretion in rejecting them again.

### B. Amended Third Accounting

Andrea's sole issue as to her fees in the final judgment on the amended third accounting is the reduction of her hourly rate to $50 per hour. We have already dealt with the rate reduction as it applied to the fourth and fifth accountings. Andrea makes the same argument against the rate reduction in the third accounting – her rate was already approved. The same analysis applies to the rate reduction made in the third accounting.

Andrea also objects to the surcharge order of $24,000. The sole basis for this objection is that she did not act wrongfully when she overpaid herself. She admits she was already reimbursed in the total amount of $12,000 ($5,000 and $7,000) in two prior accountings.[14] The sloppy record-keeping the court repeatedly criticized is responsible for the confusion.

In June 2013, the court ordered Lynn to pay Andrea for charges related to David's care that exceeded the $12,000 monthly payment already in effect. As we

---

[13] "Reimbursement for purely local travel expenses, including the cost of fuel or mileage and parking charges, is usually not approved by the court if you [i.e., a conservator] intend to request fees for your services because such expenses are considered paid by an award of compensation." (Judicial Council of Cal., Handbook for Conservators (2016 Rev. Ed.), p. 4-58.) "[M]any courts will not allow you to reimburse . . . your own . . . mileage or other local travel and parking expenses . . . if you also ask for fees. These costs are considered overhead expenses, to be reimbursed in the compensation approved by the court." (Judicial Council of Cal., Handbook for Conservators (2016 Rev. Ed.), p. 5-70.)

[14] The $5,000 advance was reimbursed pursuant to the second accounting. In her opening brief, Andrea identifies a $7,000 advance that was included in her supplemented *first* accounting as the amount she collected twice. She testified at trial about what may have been *another* $7,000 mistake (or maybe the same mistake) by which she was reimbursed for a loan in that amount that she immediately canceled.

19

explained above, in September 2014, Andrea petitioned for an order requiring Lynn to give her an extra $24,000 for David, pursuant to the June 2013 order. Part of the $24,000, Andrea claimed, came from two advances from her and her mother, for $5,000 each.

The petition was heard in January 2015. Andrea got $24,000 in March, deposited the check in the conservatorship account, and then immediately wrote a check to herself for that amount.

The *second* accounting included as a "receipt" a $5,000 advance from Andrea dated September 10, 2014. It also included a request for reimbursement of $5,000 to Andrea for an advance made on that date. The $36,500 in reimbursement approved by the court included the $5,000 advance. Neither the schedules nor the accounting itself includes a record of an advance by Andrea's mother. It also appears that *another* schedule, showing *additional* advances by Andrea in the total amount of $14,931, was approved as part of the second accounting.

To summarize: regarding the $24,000 to which Andrea helped herself during the third accounting period, (1) a $5,000 advance from Andrea had been approved in the second accounting and awarded to Andrea; (2) additional advances from Andrea in the amount of $14,931 may have been approved, and (3) there was no record of a $5,000 check to the conservatorship account from Andrea's mother in the second accounting.

Nothing in the record indicates that the court was ever asked to approve a payment from the conservatorship account to Andrea's personal account. The order of January 20, 2015, required Lynn to pay $24,000 "directly to petitioner, conservator, Andrea Bower." The payment was to be made to Andrea in her capacity as conservator.

Inexplicably Andrea argues that the entire $24,000 surcharge should be "stricken" because "there is insufficient evidence that Andrea acted wrongfully." Even though she *admits* she was overpaid by $12,000, she should not be surcharged at all

20

unless "there is evidence that Andrea's [actions] were objectively unreasonable *and* undertaken in bad faith"

Black's Law Dictionary defines "wrongful" as [i]njurious, heedless, unjust, reckless, unfair." (Black's Law Dict. (5th ed. 1979), p. 1446, col. 1.) Andrea appears to assume she should be surcharged only if she double-billed on purpose. But it is surely "heedless" to ask for the same reimbursement twice and both "unjust" and "unfair" that a conservator should keep money after she admits she is not entitled to it.

The probate court approved all of Andrea's requests for reimbursement in the second accounting. She did not inform the court at that time that she had already requested and received $24,000 for some of the same expenses. It is too late to reopen the second accounting now. (§ 2103.) But it is not too late for Andrea to repay reimbursements she admits to having received twice.

Moreover, Andrea does not discuss the details of the remaining $12,000 or explain why she should not have been surcharged for that amount. She gives us no basis for overturning the court's decision as to this half of the surcharge. We see no reason to change anything here.

## II.         Legal Fees

The bulk of both appeals now before us concerns attorney fees for which the probate court either refused to allow direct payment from the conservatorship estate or denied reimbursement to Andrea. This issue is clearly the heart of the appeals, and we review the court's decisions regarding attorney fees for abuse of discretion. (*Guardianship of K.S.* (2009) 177 Cal.App.4th 1525, 1534.)

By the fall of 2018, the probate court had become deeply concerned about the out-of-control attorney fees Andrea had already racked up and was in the process of increasing. At the first trial, in August and September 2018, the court observed, "it became quite clear that Andrea and her counsel had, as their primary focus, their request for fees and reimbursements, more so than their proof of actual expenditures under their

Third Accounting."[15] The court noted the poor documentation of Andrea's counsel's fees and expressed its disapproval of "a truly unconscionable amount of money [spent] on attorneys and legal proceedings." As a result, it denied *all* the fees requested by Andrea's counsel and denied reimbursement for the fees incurred in "[*Bower I*] or any other court proceedings in which [Andrea] did not prevail."

The court agreed to consider appropriate fees and costs if Andrea resubmitted an amended third accounting that comported with the court's rulings. The court also strongly suggested that Andrea review her fee requests in the fourth and fifth accountings in light of the same rulings.

In the court's rulings on the fourth and fifth accountings in 2019, the court again alluded to the unconscionable amount of fees. It again refused to allow payment or reimbursement for unsuccessful legal proceedings, per the initial rulings on the third accounting. Once again it found that Andrea's counsel had failed to keep adequate records, and it identified 13 "petitions, applications, motions, or accountings" filed during the fifth period that did not benefit David. It approved $16,207 in fees to Andrea's counsel.

## A. Fourth and Fifth Accountings

In the fourth and fifth accountings, Andrea's reimbursement requests were for (1) $12,130 paid to her appellate attorneys for fourth period fees incurred in *Bower I*; (2) $5,000 paid to her probate counsel during the third accounting period; and (3) $100,000 in fees she had paid her probate counsel during the fifth period. The court denied reimbursement for all these fees.

---

[15] Lynn came in for her share of criticism as well. The court remarked that the trial of the third accounting was "extraordinarily convoluted, combative and confused, and many details were overlooked by the parties, as they were more focused on churning up previously resolved matters and arguing with each other than presenting actual evidence of the finances and actions of the conservatorship." "Lynn was quite focused on attacking her sister-in-law as conservator[.]"

22

In addition, Andrea's probate counsel sought approval for 188 hours of his own time for various filings. These amounts were in addition to the reimbursements requested by Andrea.

### 1. *Bower I* fees

Having prevailed below, Andrea was the respondent in *Bower I*. While it is not strictly necessary for respondents to file briefs (see *Estate of Supeck* (1990) 225 Cal.App.3d 360, 365; *Miles v. Speidel* (1989) 211 Cal.App.3d 879, 881; Cal. Rules of Court, rule 8.220(a)(2)), most do. It would therefore not be unreasonable for Andrea to engage appellate counsel for this purpose.[16] Likewise, appellate counsel would usually consult with probate counsel to gain insight into the history of the case up to the time of the appeal.

As part of the second accounting, for the period between December 2013 and November 2014, Andrea claimed she had personally paid appellate counsel $11,000 in August and October 2014 for legal services. On April 17, 2017, the court approved $36,500 in legal fees and expenses for the second period, which sum included not only appellate counsel fees but also some probate counsel fees and Andrea's $5,000 advance.[17] Andrea claimed $84,444 in appellate fees (appellate and related probate) for the third period (December 2014 through November 2015) and $11,860 in fees for the fourth period (December 2015 through November 2016). Oral argument took place on February 19, 2016. The *Bower I* opinion was issued in April.

We believe the court abused its discretion when it categorically refused to consider awarding Andrea *any* fees incurred for appellate counsel for *Bower I* during the fourth period. We reversed the lower court because the judge had misapplied the relevant statute and had penalized Lynn for not following the court's directions precisely, not

---

[16] The true question underlying this issue – whether a division of the marital estate would have been reasonable and beneficial to David – cannot be answered after all this time and at this remove.

[17] At the same hearing, the court approved $26,755 to be paid directly to probate counsel.

23

because the request to divide the marital estate was improper or unfounded. We did not reach the merits of the request itself; instead, we sent the matter back to the trial court, to consider a second look. (*Bower I, supra,* 247 Cal.App.4th at pp. 504, 512.)

There is, however, a legitimate question about the amount of the fees, especially the fees incurred after oral argument in February 2016. These should have been minimal. Likewise, although it was reasonable for probate counsel to have some contact with appellate counsel, neither counsel's fees for this contact should run to large amounts. Appellate counsel had the record and was charging the client to become familiar with it.

Andrea's argument that the appellate fees were approved in the second accounting so they can't be challenged in the third or fourth accounting is meritless. The court is required to inspect legal fees for reasonableness each time a request for them is put forward. (§ 2642, subd. (b).) The approval of an expense for one accounting does not constitute blanket approval for the same expenses in every subsequent accounting.

We return the matter to the probate court to evaluate a reasonable award for the fees incurred and/or billed by both appellate counsel and probate counsel during the fourth accounting period for *Bower I*, if any, taking into account the amount already awarded for the second accounting period, the reasonable and necessary fee to prepare a respondent's brief and to prepare for and attend oral argument, the minimal activity that should have occurred after oral argument, and the evidentiary support for these amounts.

## 2. Probate counsel fees (non-appellate-related)

The expenses Andrea asked to have paid directly to her counsel out of the estate were $9,742 for fees incurred during the fourth period and $64,647 for fees incurred during the fifth period. Lynn objected to any fees from the fourth period and all but $16,207 in fees from the fifth period. The court approved payment of 50.2 hours at $322 per hour for a total of $16,207.

The court denied the request for the $9,742 for fees incurred during the fourth period because the billing records were "so poorly kept and shown as to not warrant payment." The court also denied fees incurred during the fifth period for 13 legal proceedings and activities that did not benefit David.

As to the denial of the fees requested for the fourth accounting period, Andrea's sole argument that her counsel submitted a declaration, redacted bills, and a detailed description of his services, so he should have been paid. In other words, he did the required paperwork. What Andrea did not address, however, are the hours expended on activities that did not, in the court's view, "warrant payment," such as the hours spent preparing a third accounting report that had to be redone because it was unreasonable and the time spent on appellate matters. Another category of expense was 16.1 hours to prepare an accounting of the amounts received and spent for David's care between January 1 and October 27, 2015, pursuant to the court order dated October 27, 2015, that reduced the monthly support amount from $12,000 to $8,000 and that found additional funds for one-on-one care for David unnecessary. Andrea has not directed us to this report in the record, and, in any event, she continued to charge the estate for one-on-one care for David, as discussed below. Since Andrea did not address any of these issues, we consider that she did not challenge the court's findings on this ground.

As to the fifth accounting, Andrea takes exception to denials of counsel's fees for four of the 13 proceedings identified by the court as not beneficial to David. These are (1) an ex parte application to advance a hearing date (filed April 19, 2017),

25

(2) a petition to increase spousal support (filed April 19, 2017),[18] (3) the remand trial after the reversal of *Bower I*, and (4) preparing the fourth accounting.[19]

With respect to the first proceeding, the ex parte application, Andrea does not explain how advancing the hearing date of a petition was reasonable and benefited David. She points to the fact that the petition was granted, but does not explain why it had to be heard earlier than the originally scheduled hearing date, May 16, 2017.

Andrea argues that the 2017 petition to increase spousal support benefited David because he needed one-on-one care. We deal with one-on-one care below. Here it is necessary only to point out that Andrea dismissed this petition in December 2017 so this filing was one of those as to which Andrea did not prevail. (See § 2641, subd. (c).) It simply went nowhere.

Andrea's counsel billed 74.7 hours to preparing for trial on the remand of *Bower I,* a trial that did not take place because Andrea dismissed the petition to divide the marital estate. Andrea argues that the original petition to divide the estate benefited David. That is not the issue. The issue is whether preparing for a trial on remand benefited David. Given the tenuous thread of a lifeline offered at the end of *Bower I*, we cannot say that the court abused its discretion in disallowing the large amount of time spent preparing for a rehearing as not beneficial to David.[20]

---

[18] In the statement of decision and judgment, this date is given as "April 9." This appears to be a typographical error. The register of actions has no record of a filing on April 9, and it records the filing of a petition on April 19.

Andrea appears to have filed an earlier petition to increase spousal support on December 20, 2016. The petition filed in December 2016 was still pending when she filed the petition in April 2017.

[19] Andrea identified a fifth proceeding – a petition filed on December 20, 2016, to enforce a court order – but no such petition is on the court's list of disallowed proceedings.

[20] "Perhaps, if the trial court had isolated those few creditor claims of the conservatorship that could be said to be for genuine support and maintenance – those few claims by creditors the Hitchmans [alternate conservators] identified as being for direct out-of-pocket expenses on David's behalf as distinct from professional fees – and *then*, having isolated those relatively small amounts, exercised its discretion under section 3089 and divided the community property based *entirely* on them, we might be able to say the trial court's decision was harmless error." (*Bower I, supra,* 247 Cal.App.4th at p. 512.)

Finally, Andrea argues that counsel should be paid for at least some of the 20.9 hours he spent preparing the amended fourth accounting report because the court approved reimbursements to out-of-network health providers in the amount of $3,466 as requested in the report. This amount represents what Shakespeare's Prince Hal called one halfpennyworth of bread in an intolerable deal of sack, given that Andrea was asking the court to approve approximately $136,000 in fees and reimbursements through the fourth accounting. (Shakespeare, Henry IV, part I, act II, scene 4.) Moreover, Andrea does not direct us to anything in the record to establish how much attorney time was spent securing reimbursement for the out-of-network providers. Given what Andrea has put before us, we cannot say the court abused its discretion in denying payment for these hours.

In addition, the court denied Andrea's request for reimbursement of $5,000 paid to her probate counsel because "the legal fees were occasioned during the Third Accounting Period[.]" Andrea argues that "this is not firmly established," ignoring the rule that it is *her* burden to firmly establish error. (See *Conservatorship of Hume* (2006) 140 Cal.App.4th 1385,1393-1394.)

The fourth accounting period ran from December 1, 2015, through November 30, 2016. Counsel's bill dated January 1, 2017, for services from November 2 through December 14, 2016, showed a past due balance of $156,461, which the $5,000 payment reduced to $151,461. According to the bills attached to counsel's declaration, a past due balance of no less than $145,000 had been running at least since January 1, 2016. The court could properly infer that the $5,000 payment received in November 2016 was applied to past due fees for legal services rendered before December 1, 2015. The alternative explanation, that counsel put in $145,000 worth of time at $350 per hour during the month of December 2015, seems unlikely.

27

### 3. $100,000 reimbursement

The court denied Andrea's request for reimbursement for $100,000 she had paid her counsel on the ground that she was "perpetrating a fraud on the court" because she had not disclosed that she and her counsel had received over $200,000 from the 2017 sale of the Riverside trailer park. Andrea's defense is that the court already knew about this money, so it couldn't have been a fraud. She also argues that Lynn was not truthful in 2017 in telling the court that she had realized no money from this sale. Lynn's conduct is not at issue on this point. We are not applying the "Doctrine of Relative Filth" here; we're trying to decide whether the court erroneously measured Andrea's conduct.

It is true that a different judge learned of Andrea's receiving funds from the sale of the Riverside property (although not from Andrea) in connection with a hearing in 2017 regarding Andrea's request for an order to show cause against Lynn for contempt for selling the property.[21] But another judge handling the accounting in 2019 could not have been expected to put the pleadings from the 2017 hearing together with a request for an *additional* $100,000 in fees submitted in 2019, especially since neither accounting refers to this bonanza. We cannot say the court abused its discretion in concluding that omitting to inform the court in 2019 about the 2017 payout was done in bad faith, especially considering that Andrea *also* failed to inform the court as part of the contempt proceeding in 2017 that she had received $200,000 from escrow.

Andrea also argues that she was entitled to the funds, through a judgment lien, so she did not act in bad faith. She misses the point. The court did not deny her request for the $100,000 reimbursement because she was not *entitled* to the money she received in 2017. The denial was based on her failure to inform the court in 2019 that

---

[21] "[T]he court has some difficulty understanding why Andrea Bower upon learning of the intent to sell the properties did not return to court seeking to block the sale as a violation of the 2013 stipulation. Instead she and her counsel collected funds from the sale and only after receiving those monies filed this motion. The court finds this strategy perplexing . . . ."

28

she had received this large sum just two years before. Her entitlement to these funds was not at issue. There was no abuse of discretion.

## B. Amended Third Accounting

The legal fees Andrea resubmitted in the amended third accounting, the rulings on which she now appeals, are (1) *Bower I* legal fees; (2) fees incurred in enforcing a court order of June 20, 2013; (3) fees for preparing objections to a report from Lynn, and (4) reimbursement for $14,000 Andrea paid to probate counsel.

### 1. *Bower I* legal fees

In the amended third accounting, Andrea requested reimbursement for $69,000 in fees paid to the appellate counsel representing her in *Bower I* and $4,500 in fees paid to her probate counsel for the *Bower I* appeal.[22] We have dealt with the *Bower I* fees above, and the same analysis applies here. The probate court will look at *all* the fees incurred for *Bower I* and determine a total amount for fees that were both reasonable and necessary and that have proper evidentiary support.

### 2. Enforcement of June 20, 2013, order

As we described above, on June 20, 2013, the court ordered Lynn to pay Andrea for charges related to the David's care exceeded the $12,000 monthly payment Lynn was already making. Andrea eventually collected $24,000, which ultimately ended up in her personal bank account in March 2015. The court surcharged her for this amount.

Andrea's counsel asked for payment for 19.8 hours relating to "enforcing" the order of June 20 as it pertained to these additional expenses. The court denied counsel's demand because "Andrea had no right to those funds." We interpret this finding to mean that Andrea did not meet her burden of proof to show her entitlement to

---

[22] The probate court approved Andrea's *Bower I* fees incurred during the *second* accounting period, December 2, 2013, through November 30, 2014, in an unspecified amount. The court's order is dated April 17, 2017.

Andrea originally asked for $87,895 in appellate counsel fees in the amended third accounting.

them.  (See *Neel v. Barnard* (1944) 24 Cal.2d 406, 420; *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1316, fn. 4.)  Given that she now *admits* the accuracy of this finding with respect to half of the amount and that her entitlement to the rest of it is highly doubtful, we must agree with the court.

The "enforcement" petition made no mention of the upcoming second accounting report, filed within a few days of Andrea's receiving the check from Lynn, even though counsel knew or should have known that at least some of the money Andrea collected was also being requested in the second accounting.  Instead the implication was that these expenses were in addition to those to be set forth in the second accounting.  We cannot say the court abused its discretion in determining that the petition should not have been filed in this form.

### 3.  Additional time and reimbursement

Probate counsel asked for 10.1 hours in attorney time for reviewing an accounting prepared by Lynn, pursuant to a court order from the trial of the first accounting dated December 12, 2014, and for preparing objections to the accounting.  Counsel also stated that he appeared at a trial and a mandatory settlement conference, and it is not clear from counsel's declaration whether the 10.1 hours included the trial, the MSC, and the other items under that subsection.

Lynn objected to this time as being part of the first accounting.  The court denied the time as being expended on "work necessary to correct and repair the First Accounting which already had required 78 hours . . . to do."

Both parties agree that the court mistakenly attributed this time to preparing the first accounting.  The error seems to have originated in Lynn's written closing argument, in which she told the court that this time was attributable to preparing the first accounting.  Under the circumstances, we believe the equitable solution is to return this issue to the probate court to evaluate it under the correct circumstances.

30

Andrea next identifies the probate court's denial of reimbursement for $14,000 paid to her probate counsel as error. She has apparently forgotten that she reduced the amount requested from $14,000 to $12,000 during the retrial of the third accounting. This reduction, made on the stand at trial, is another example of the poor record-keeping to which the court referred.

The court adopted Lynn's objection to the payment of $14,000 reimbursement to Andrea for attorney fees, which was that Andrea did not carry her burden to show that these fees were for services rendered during the third accounting period. The court referred to Lynn's written closing argument and certain pages of exhibit 2 as the evidence for this holding. The bates numbers of the pages of trial exhibit 2, the amended third accounting, are illegible because the incorrect page numbers for the appendix have been stamped over the bates page numbers of the exhibit. (See Cal. Rules of Court, rules 8.845(d)(1), 8.838(a), 8.144(b)(2)(D).)

Andrea has not provided us with an adequate record to review this issue. It is appellant's task to "[s]upport any reference to a matter in the record by a citation to . . . the place in the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) When an appellant fails to do this, we treat arguments not supported by adequate citations to the record as waived. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)

III.     **One-on-One Care Charges**

Andrea makes two related arguments on this issue. The first is that the court erred by denying her request for approval of these charges. The second is that the court should not have imposed surcharges on her for the amounts paid out during the fourth and fifth accounting periods for one-on-one care.

To support both arguments, Andrea baldly asserts that the court did not find, in October 2015, that David did not need one-on-one care and did not direct her to get court approval if she wanted to resume this care. It seems rather clear to us that it

31

did.[23]  The court repeatedly stated that David's care was adequate *without* a one-on-one caregiver.  What is even more significant is that the hearing took place on October 27, 2015, with Andrea present, and as of November 16, 2015, Andrea was engaging one-on-one caregivers again.  At the retrial of the third accounting, she acknowledged that she briefly stopped one-on-one care "because of the ruling," indicating that she knew the court had disapproved this expense.  She then decided, on her own, that she would resume these charges, despite this knowledge.  This is pretty serious unexplained misconduct.

Andrea argues with respect to the refusal of the probate court to approve expenditures for this care in 2019 that she did not have to seek court approval before spending this money.[24]  Her hair-splitting interpretation of the court's October 2015 order does not support this argument.

As to her second argument, Andrea maintains that she could be surcharged only if she acted wrongfully – that is, objectively unreasonably and in bad faith, and that her failure to get court approval before resuming one-on-one care does not preclude an after-the-fact approval, citing section 2401.3, subdivision (b).[25]

We think defying the court's explicit instruction to seek approval before engaging a one-on-one caregiver qualifies as objectively unreasonable and bad faith.  The

---

[23]     "So it appears to me that that facility meets his needs.  It is a reasonable amount of money.  I am going to be handling this case in the future.  So whatever you are doing in terms of care, you are going to have to obviously present to the court and I am going to have to rule on it.  But it appears right now that that is meeting his needs.  The evidence was pretty clear to me on that."

[24]     "[I]f the transaction required court authorization which was not obtained, when it is reviewed under [Probate Code] Section 2625 the guardian or conservator must justify the transaction in the same manner that would have been required had authorization been sought before the transaction was made.  And the guardian or conservator runs a risk that the court will not approve and confirm the transaction at the time of the accounting." (Cal. Law Revision Com. com. following West's Ann. Prob. Code, § 2625 (1990 Enactment), at p. 561.)

[25]     Section 2401.3, subdivision (b), provides, "If the guardian or conservator has acted reasonably and in good faith under the circumstances as known to the guardian or conservator, the court, in its discretion, may excuse the guardian or conservator in whole or in part from liability under subdivision (a) if it would be equitable to do so."  Andrea interprets this code section as *requiring* approval *unless* the conservator acted unreasonably or in bad faith.

present judge also found it suspicious that, while Andrea paid the one-on-one service promptly each month, she frequently short-paid the assisted living facility, to the extent that David was in danger of being evicted. The court's reasonable inference was that Andrea considered it more likely she would get additional funds approved if they were supposed to be used to prevent David from being thrown out.

Andrea's main defense with respect to this second issue is to disagree with the probate court regarding the evidence of the necessity for this care. The court entertained testimony on this subject and found it unpersuasive and not founded on personal experience. We do not reweigh evidence. (*Whyte v. Schlage Lock Co*. (2002) 101 Cal.App.4th 1443, 1450.) More importantly, the court's instructions in October 2015 precluded Andrea from making this decision on her own; she had to get court approval, *and she knew she did*. Regardless of the necessity for this kind of supervision, Andrea defied the court's order to seek approval for it. The court did not abuse its discretion when it refused to approve expenditures for one-on-one care and surcharged Andrea for these amounts.

Andrea also objects to a surcharge of $1,451 for a one-on-one payment made during the third accounting period and a surcharge of $2,185 to Palomar Medical Center for an expense incurred during the third accounting period, but paid during the fourth period. Her argument is that the trial was restricted to the fourth and fifth periods, so she should not have been surcharged for third-period expenses.

In addition to error, an appellant must show prejudice arising from the error, that is, a reasonably probable more favorable result. (Code Civ. Proc., § 475.) We think we can say with certainty that if these two amounts had been put before the court in the retrial of the third accounting, the court would have surcharged Andrea for them. The court had clearly expressed its opinion of one-on-one charges incurred after October 2015 without court approval, and it had also firmly stated that it would not allow payments for expenses, like the Palomar expense, that arose as a result of moving David's residence.

33

Andrea has not explained how surcharging her as part of the fourth accounting instead of the third prejudiced her.

**IV.        Bad Faith**

Section 2622.5, subdivision (b), provides in pertinent part, "If the court determines that the opposition to the objections was without reasonable cause and in bad faith, the court may award the objector the costs of the objector and other expenses and costs of litigation, including attorney's fees, incurred to contest the account."  (See also § 11003, subd. (b).)

The court found that Andrea's opposition to Lynn's objections to the fourth and fifth accountings "was without reasonable cause and in bad faith."  "[R]easonable cause to oppose a contest of an account requires an objectively reasonable belief, based on the facts then known to the [conservator], either that the claims are legally or factually unfounded or that the [objector] is not entitled to the requested remedies." (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 927.)  Whether there was reasonable cause to raise the objections is a legal issue we review de novo, absent a factual dispute as to the conservator's knowledge at the time.  (*Ibid.*, but see *Guardianship of K.S., supra,* 177 Cal.App.4th at p. 1533 [reasonableness and bad faith reviewed for abuse of discretion].)  "Bad faith involves a subjective determination of the contesting party's state of mind – specifically, whether he or she acted with an improper purpose." (*Powell v. Tagami, supra,* 26 Cal.App.5th at p. 234.)  Whether the objections were made in bad faith is a factual issue we review for substantial evidence.  (*Ibid.*)

We have no difficulty concluding that Andrea's opposition to Lynn's objections to the fourth and fifth accountings was objectively unreasonable.  The court had warned her that she was overstepping the bounds of "just and reasonable" at least as of October 2018 and provided examples of unreasonable charges that would not be authorized, including transportation costs.  The court also put on record its disapproval of unconscionable legal fees and told her she would not be reimbursed for fees incurred in

34

connection with proceedings in which she lost. The court even gave her the opportunity to reconsider the fourth and fifth accountings with these strictures in mind.

Despite these warnings and admonitions, Andrea's amended fourth accounting differed from the original fourth accounting only in the reduction of her hourly rate from $100 per hour to $80 per hour. Her fifth amended accounting differed from the original fifth accounting only in the reduction of her hourly rate from $100 per hour to $80 per hour and a reduction of $100 for mileage.

Lynn's objections to the amended fourth and fifth accountings tracked the faults the court had identified after the trial of the third accounting. The court found the same kinds of overcharges in the fourth and fifth accountings. Andrea could not have reasonably believed that Lynn was not entitled to oppose these fees and expenses or that the court would suddenly do a complete about-face with respect to its prior rulings.[26]

As for the subjective element, bad faith, whether we review for substantial evidence or abuse of discretion, the outcome is the same. The court had before it an extended history of Andrea's advocating positions contrary to Lynn's just because they were contrary, or, as the court put it, Andrea's "desire to fight Lynn over every possible issue." This was one source of the outrageous legal fees. The opposition to Lynn's objections – nearly all of which the court adopted as correct – was simply the latest example of this improper purpose.

## DISPOSITION

The judgments on the amended and restated third accounting and the amended fourth accounting are remanded to the probate court to determine a reasonable and necessary amount of attorney fees relating to the former conservator's participation in the appeal of *Bower I* and to modify the relevant judgment to approve the payment of

---

[26] Andrea argues that she did not actually file a written opposition to Lynn's objections. This is another example of hairsplitting. If Andrea did not oppose Lynn's objections, she could have simply stipulated to the entry of an accounting reflecting them (which mostly happened anyway), and there would have been no need for a trial.

35

such fees if it determines that additional fees were reasonable, necessary, and adequately supported by the evidence. In addition, the court will determine the appropriate amount of reasonable, necessary, and adequately supported legal fees, if any, to be awarded for the 10.1 hours mistakenly attributed to the first accounting. In all other respects, the judgments are affirmed. Respondent is to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.

36